**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| UNITED STATES OF AMERICA and<br>PEOPLE OF THE VIRGIN ISLANDS,<br><br>v.<br><br>DWAYNE WESSELHOFT,<br><br>  Defendant. | )<br>)<br>)<br>)<br>)  Criminal Action No. 2015-0036<br>)<br>)<br>)<br>)<br>) |

**Attorneys:**
**Alphonso G. Andrews, Esq.,**
St. Croix, U.S.V.I.
  *For the Government*

**Kia D. Sears, Esq.,**
**Omodare B. Jupiter, Esq.,**
St. Croix, U.S.V.I.
  *For Defendant*

### MEMORANDUM OPINION

**Finch, Senior District Judge**

THIS MATTER comes before the Court on Defendant Dwayne Wesselhoft's "Motion to Reconsider and Memorandum in Support of Motion to Suppress," filed on April 15, 2016. (Dkt. No. 49). By way of this motion, Wesselhoft asks the Court to reconsider its April 8, 2016 Memorandum Opinion in which it denied in part his Motion to Suppress. *Id.* The Government filed a "Response to Motion for Reconsideration" on May 9, 2016. (Dkt. No. 52). Wesselhoft did not file a Reply. For the reasons that follow, Wesselhoft's Motion to Reconsider will be denied.

### I. BACKGROUND & PROCEDURAL HISTORY

On November 17, 2015, Wesselhoft was indicted in the District Court of the Virgin Islands on the following charges: Unlawful User of a Controlled Substance in Possession of Firearm/Ammunition (Counts 1-3); Unauthorized Possession of a Firearm (Count 4); and

Unauthorized Possession of Ammunition (Counts 5, 6). (Dkt. No. 1). On January 22, 2016, Wesselhoft filed a Motion to Suppress, asking that "all physical evidence and statements illegally taken or flowing from the illegal seizure of Mr. Dwayne Wesselhoft and subsequent search of his property by law enforcement officers" be suppressed, as they were obtained in violation of his constitutional rights. (Dkt. No. 21). The United States filed an Opposition (Dkt. No. 26), and the Court held a suppression hearing on March 2, 2016. U.S. Drug Enforcement Agency ("DEA") Special Agent Jeremy Latchman; High Intensity Drug Task Force ("HIDTA") Officer Sydney Elskoe; and Bureau of Alcohol, Tobacco and Firearms ("ATF") Special Agent Travis Strickland, testified for the Government. Timothy Barnes testified for the Defendant.

On April 8, 2016, the Court issued a Memorandum Opinion and Order which granted in part and denied in part Wesselhoft's Motion to Suppress. (Dkt. Nos. 39, 40). The Court first found that, because the testimony of the Government agents differed substantially from the Defendant's witness on key points, it was first required to make a credibility determination. In doing so, the Court credited the agents' testimony concerning how the events unfolded on the day of the search. The Court found the agents' account "consistent and believable"; that "none of the agents attempted to avoid any questions or tailor their responses to hide the kind of improper actions that Barnes attributed to them"; and that it simply "strain[ed] credulity" to believe Barnes' account. (Dkt. No. 40 at 12). The Court also noted that Barnes had a "substantial personal interest in testifying to unlawful police conduct, and to his own innocent conduct of not smoking or drinking that morning, because he was also arrested that day." *Id.* The Court observed that if his version of events was credited—which described blatant Fourth Amendment violations—all of the evidence gathered from the agents' entry onto the property would be suppressed in the prosecution of his friend Wesselhoft and in his related case as well. *Id.*

The next issue concerned the parameters of the "knock and talk" doctrine which related to the agents' entrance onto Wesselhoft's property. According to this doctrine, a law enforcement officer lacking a warrant may enter private property, proceed to the front door, and attempt to speak to the occupants about an investigation without offending the Fourth Amendment. *Estate of Smith v. Marasco*, 318 F.3d 497, 519 (3d Cir. 2003). Wesselhoft argued, *inter alia*, that the agents' intent in coming onto his property was to conduct a search, which is not permitted under the "knock and talk" doctrine. The Court rejected that argument, pointing out that Third Circuit case law provides that the fact that "the agents were investigating a possible marijuana selling operation at the property and wished to talk with the occupant(s) in the hope that they would be allowed to perform a consent search, does not transform their approach up the driveway, through the gate, and into the carport into a Fourth Amendment violation." (Dkt. No. 40 at 13, citing *United States v. Coles*, 437 F.3d 361, 370 (3d Cir. 2006) (observing that a permissible purpose for a "knock and talk" is to obtain consent to search), and *United States v. Claus*, 458 F. App'x 184, 188 (3d Cir. 2012) (recognized purposes behind knock and talk include "either speak[ing] with occupants or ask[ing] for consent to search")). The Court further found that the "objective reasonableness" of Latchman, Elskoe, and Fritz's entry onto the property and their interaction with Wesselhoft, Barnes, and a third person, Raseem, placed their conduct squarely within the scope of the "knock and talk" doctrine" and did not violate Wesselhoft's Fourth Amendment rights. *Id.* at 14.

However, the Court observed that the actions of Agent Strickland, whose path "literally diverged" from that of Latchman, Elskoe and Fritz once Strickland entered the property, was "discrete enough from the actions of Latchman, Elskoe and Fritz to warrant a separate analysis under the 'knock and talk' doctrine." *Id.* at 14 15. The Court found that, "[b]y walking off the driveway and away from the carport, and heading directly to the back corner of the property,

Strickland deviated from the path that courts have found acceptable for officers to travel when approaching a residence to conduct a 'knock and talk' encounter. Although officers have a right enter the curtilage while executing a 'knock and talk,' this right does not 'necessarily extend[ ] to the officers the right to enter [elsewhere] into the curtilage.'" *Id.* at 15, quoting *Marasco*, 318 F.3d at 520. The Court contrasted the actions of Agents Latchman, Elskoe, and Fritz, which "objectively comported with the 'knock and talk' doctrine," with those of Strickland, who "exceeded the 'scope of what society permits any private citizen to do on another person's curtilage,'" found Strickland's "warrantless entry into the back corner of the yard constituted a Fourth Amendment violation," and suppressed the two marijuana plants that Strickland saw from that purview, which had been collected as evidence.[1] *Id.* at 15, 16.

Wesselhoft also claimed that he, Barnes, and Raseem were seized in the carport and that the agents proceeded to search the house without his consent, which provided grounds for suppressing all of the evidence discovered in the house and all of the statements he made there. Once again, the Court credited the agents' testimony, which described a non-confrontational, consensual exchange among the three agents and Wesselhoft. Based on that testimony, there was no show of physical force, the agents did not touch Wesselhoft or restrain his liberty in any way while he was in the carport or the house, and their tone of voice was normal. The other agents remained at the bottom of the driveway. While Strickland was positioned at the back corner of the house, there was no evidence that his presence threatened Wesselhoft. Further, Latchman requested Wesselhoft's permission to search the house, Wesselhoft agreed, and felt free to assert that he would allow a search only on condition that he accompanied the agents. The agents

---

[1] The Court also suppressed marijuana found in a covered wooden bowl on a table in the carport, concluding that Barnes and Raseem could not give permission to the agents to look inside the bowl since they did not live at the residence. (Dkt. No. 40 at 16-17).

4

consented to his condition. The Court concluded that, under the totality of the circumstances, there was no show of authority by the officers, no seizure, and no Fourth Amendment violation—either while Wessehoft was in the carport or in the house. *Id.* at 19.

The Court also found that, based on the agents' credible testimony, Wesselhoft consented to the search of his house. The circumstances under which that consent was given showed no "signature signs of coercion," such as a "display of force" by the agents or that Wesselhoft's will was "overborne," thereby making his consent involuntary. The Court found that the agents committed no Fourth Amendment violation and had appropriately seized the firearm, ammunition, and marijuana they discovered during the search. As a result, the Court held that it would not suppress any evidence discovered in the residence or any statements Wesselhoft made during the search. *Id.* at 20-22.

Finally, Wesselhoft sought to suppress statements he made during the interview with Latchman and Elskoe at the DEA Office, contending that his refusal to sign the Advice of Rights form on which the *Miranda* rights were printed indicated that he did not waive those rights. (Dkt. No. 37 at 30-31). The Court rejected this argument as well, finding that Wesselhoft stated that he understood the rights which had been read to him twice, but would not sign the form. Nevertheless, Wesselhoft volunteered to speak to the agents, thereby "freely decid[ing] to forgo those rights." (Dkt. No. 40 at 24, quoting *New York v. Quarles*, 467 U.S. 649, 654 (1984)). The Court found that nothing in Latchman's or Elskoe's testimony indicated that Wesselhoft's background, experience or conduct impacted his ability to understand the rights he was waiving, that his physical or mental state was weakened such that any resistance he may have had to speaking with the agents was overborne, or that he was coerced into waiving his rights in an atmosphere of intimidation or deception. *Id.* at 24-25.

The Court also rejected as an "unsupported inference, belied by the actual evidence" Wesselhoft's argument that his signing the form declining to have his interview videotaped and not signing the Advice of Rights form indicated that he was not waiving his *Miranda* rights. *Id.* at 25. The Court cited case law holding that the fact that a defendant refused to sign an Advice of Rights form did not mean that he did not waive those rights. *Id.* citing, *inter alia*, *North Carolina v. Butler,* 441 U.S. 369, 373 (1979), and *United States v. Velasquez*, 626 F.2d 314, 320 (3d Cir. 1980). The Court held that Wesselhoft's waiver of his *Miranda* rights was voluntary, knowing, and intelligent, and denied the motion to suppress to the extent he sought to suppress the statements he made to the agents. *Id.* at 26.

On April 15, 2016, Wesselhoft filed the instant "Motion to Reconsider." He raises numerous arguments, including: the Court erred in considering Agents Latchman, Elskoe, and Fritz's conduct separately from Agent Strickland's conduct, since law enforcement "as a whole" violated his constitutional rights; and any consent given by Wesselhoft was invalidated as the product of an illegal search and seizure because the agents violated the parameters of the "knock and talk" doctrine. (Dkt. No. 49). Wesselhoft adds that Barnes' testimony that Wesselhoft did not consent to a search should be credited because he did not have a pending criminal case at the time he testified. *Id.* The Government countered that most of the arguments advanced by Wesselhoft were simply disagreements with the Court's analysis denying the Motion to Suppress, and were therefore improperly raised on a Motion to Reconsider. (Dkt. No. 52). The only new fact set forth in Wesselhoft's Motion—that Barnes did not have a pending case when he testified—was of no moment in reconsidering Barnes' credibility because the Court had not based its credibility assessment solely on Barnes' bias, but primarily on the consistency and believability of the agents' testimony. *Id.*

6

## II. DISCUSSION

### A. Legal Standard

"The purpose of a motion for reconsideration . . . 'is to correct manifest errors of law or fact or to present newly discovered evidence.'" *Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). Accordingly, in order to prevail on a motion for reconsideration, "a plaintiff must show '(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct clear error of law or fact or to prevent manifest injustice.'"[2] *Butler v. Pa. Bd. of Probation & Parole*, 613 F. App'x 119, 125 (3d Cir. 2015) (quoting *Max's Seafood Café,* 176 F.3d at 677); *see also* Local Rule of Civil Procedure 7.3 (listing same three grounds).

Reconsideration is an extraordinary remedy and "should be granted sparingly" in accordance with the device's "stringent" standard. *Chesapeake Appalachia, L.L.C. v. Scout Petroleum, LLC*, __ F. Supp. 3d __, 2014 WL 7335045, at *2 (M.D. Pa. Dec. 19, 2014) (quotation and citation omitted); *see Bostic v. AT & T of the V.I.*, 312 F. Supp. 2d 731, 733 (D.V.I. 2004).

Motions for reconsideration "are not to be used as 'a vehicle for registering disagreement with the court's initial decision, for rearguing matters already addressed by the court, or for raising

---

[2] Clear error exists if, "'after reviewing the evidence,' [the reviewing court is] 'left with a definite and firm conviction that a mistake has been committed.'" *Norristown Area Sch. Dist. v. F.C.,* __ F. App'x __, 2016 WL 98571, at *3 n.8 (3d Cir. Jan. 8, 2016) (quoting *Oberti v. Bd. of Educ.*, 995 F.2d 1204, 1220 (3d Cir. 1993)). In the context of a motion to reconsider, manifest injustice "[g]enerally [ ] means that the Court overlooked some dispositive factual or legal matter that was presented to it." *Greene v. V.I. Water & Power Auth.*, 2012 WL 4755061, at *2 (D.V.I. Oct. 5, 2012) (quoting *In re Rose*, 2007 U.S. Dist. LEXIS 64622, at *3 (D.N.J. Aug. 30, 2007)). "Manifest injustice has also been defined as an 'error in the trial court that is direct, obvious, and observable.'" *Id.* (quoting *Tenn. Prot. & Advocacy, Inc. v. Wells*, 371 F.3d 342, 348 (6th Cir. 2004)).

arguments that could have been raised before but were not.'" *Greene v. V.I. Water & Power Auth.*, 2012 WL 4755061, at *2 (D.V.I. Oct. 5, 2012) (quoting *Bostic*, 312 F. Supp. 2d at 733); *Gutierrez v. Ashcroft*, 289 F. Supp. 2d 555, 561 (D.N.J. 2003) ("A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden."). In addition, reconsideration is not a substitute for appeal and is not a proper avenue for repeated litigation of the merits of a case. *See Green v. Apker*, 153 F. App'x 77, 80 n.5 (3d Cir. 2005); *Ogden v. Keystone Residence,* 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002) ("A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant.").

### B. Analysis

Wesselhoft's first argument is that the Court "sets a dangerous precedent" in ruling that Agents Latchman, Elskoe, and Fritz's actions could be analyzed separately from Agent Strickland's actions when addressing their entry on the property pursuant to the "knock and talk" doctrine. Wesselhoft stresses that the actions of the agents were not disparate "but planned in advance and well organized," and that Strickland was acting as "a coordinated member of a team." (Dkt. No. 49 at 2). He claims that, under the Court's new precedent, officers could formulate a plan prior to making a warrantless entry onto property that some officers would adhere to the confines of the knock and talk doctrine and others would not, knowing that the actions of the "offending officers" would not be imputed to the group, and "law enforcement would thus be permitted to exploit this Fourth Amendment loophole with little to no ramifications." *Id.* at 2-3. Wesselhoft urges the Court to adopt a rule that "individual officers cannot be distinguished when

considering the illegality of law enforcement's actions," and therefore, in this case, all of the evidence and all statements must be suppressed. *Id.* at 3-4.

Wesselhoft cites one case in support of his position, *Marasco*, where two police officers knocked on the front door of a residence to investigate a complaint and, when no one answered, proceeded to the back yard of the house and spent a "significant amount of time" looking around the property. *Marasco*, 318 F.3d at 521. "[A]t least" one of the two officers entered the garage. *Id.* at 518. The district court did not make findings of fact "to support its conclusion that the officers' decision to proceed to the back of Smith's house was reasonable," nor did it "discuss the layout of the property or the position of the officers on that property." *Id.* at 521. The Third Circuit held that questions of fact existed as to whether the officers' intrusion onto the curtilage was reasonable, given the facts in that case, and reversed the district court's grant of summary judgment to defendants in this case brought pursuant to 42 U.S.C. § 1983. Wesselhoft likens *Marasco* to his case, claiming that the Third Circuit made "no distinction between the conduct of the individual officers," and "[t]he fact that only one officer of a two officer team violated Mr. Marasco's constitutional rights was not an issue." (Dkt. No. 49 at 3). In making this argument, Wesselhoft does not assert that an intervening change in controlling law or new evidence warrant reconsideration. If anything, Wesselhoft's argument is that the Court's decision must be changed in order to correct clear error of law or fact or to prevent manifest injustice: *i.e.*, the Court misapplied *Marasco* in its analysis.

The Court disagrees with Wesselhoft's contention, as the facts in both cases are significantly different. In *Marasco*, *both* officers allegedly exceeded the scope of a "knock and talk" entry onto the property by going from the front door, where they were permitted to be, into the back yard, where they were not permitted to be, and spending a significant amount of time

there. *See Carman*, 749 F.3d at 199 (intrusion could not be justified as a knock and talk when officer proceeded directly to back of property, rather than to area where he ordinarily would encounter residents); *Marasco*, 318 F.3d at 519-20 (rejecting the "sweeping proposition" that "officers may proceed to the back of a home when they do not receive an answer at the front door any time they have a legitimate purpose for approaching the house in the first place."). The fact that one or both of the officers then entered the garage is simply an *additional* violation of the knock and talk doctrine. There was no reason to treat the *Marasco* officers' actions separately as they had both violated the knock and talk doctrine—or at least a genuine issue of material fact was raised concerning their actions.

In this case, however, the three agents (Latchman, Elskoe, and Fritz) committed no Fourth Amendment violation; they remained within the parameters of a proper "knock and talk" entry onto Wesselhoft's property. Only Strickland, who followed a different path from the group, exceeded the bounds of knock and talk doctrine. That violation was addressed, as the marijuana plants that he observed from his position at the back of the house were appropriately suppressed. Wesselhoft provides no rationale for why the actions of an offending agent must be attributed to non-offending agents simply because they may have arrived together at the property. In any event, Wesselhoft's policy argument that, if "the actions of the offending officers [are] not imputed to the group," then "law enforcement would thus be permitted to exploit this Fourth Amendment loophole with little or no ramifications" is completely undercut by the results here. (Dkt. No. 49 at 3). The ramification was that the Court suppressed the evidence collected by the offending agent, which left no loophole, and nothing for the agents to exploit. The Court finds that there was no manifest injustice, and rejects Weesselhoft's Motion to Reconsider on this ground.

Wesselhoft next argues that "any consent [he gave] was invalidated as the product of an illegal search or seizure and the physical evidence inside the home and the statements must be suppressed." *Id.* at 4. He claims that his property was illegally searched because officers violated the parameters of the knock and talk doctrine, that he was illegally seized, and that the encounter not consensual as required under the knock and talk doctrine. *Id.* at 4-15. Here, Wesselhoft merely reargues issues that were examined and resolved in the Memorandum Opinion and Order granting in part and denying in part the Motion to Suppress. He provides no argument that reconsideration is warranted due to an intervening change in the controlling law, the availability of new evidence that was not available when the court issued its order, or the need to correct clear error of law or fact or to prevent manifest injustice. Rather, he merely registers his disagreement with the Court's analysis, rearguing and relitigating those points. That is a patently improper basis for a court to grant a Motion for Reconsideration, and is rejected accordingly. *Green*, 153 F. App'x at 80 n.5; *Greene*, 2012 WL 4755061, at *2; *Ogden,* 226 F. Supp. 2d at 606.

Finally, Wesselhoft argues that Timothy Barnes' testimony that Wesselhoft did not give consent to the agents to search the house "should not be discredited because he did not have a pending criminal case at the time he testified." (Dkt. No. 49 at 15). Wesselhoft points to the Court's Memorandum Opinion where it characterized Barnes' testimony as "self-serving" and therefore not credible, because the Court "incorrectly assumed" that, at the time he testified, Barnes was facing criminal charges stemming from his arrest. *Id.* Wessehoft argues that Barnes "was never charged with a crime in connection with his arrest"; he was "released from custody that same day and never prosecuted"; "he did not have an active case at the time he testified"; "he furthered no personal interest by testifying"; and "[t]he only witnesses to testify with self-serving motives were the law enforcement officers." *Id.* at 15-16.

During the suppression hearing, Barnes testified that he had been arrested on the day of the search, processed and released. (Dkt. No. 40 at 8). Although Wesselhoft states that Barnes was arrested but never charged with a crime, he provides no documentation showing the disposition of the charges against Barnes. Nor has he demonstrated that this evidence was unavailable prior to the suppression hearing—especially since Barnes was arrested on October 1, 2015 and the suppression hearing took place five months later, on March 2, 2016. *See Howard Hess Dental Labs, Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237, 251 (3d Cir. 2010) ("[N]ew evidence, for reconsideration purposes, does not refer to evidence that a party obtains or submits to the court after an adverse ruling. Rather, new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously available.").

While the Government concedes that Barnes did not have a pending case when he testified at the suppression hearing, it points out that this fact would make no difference in the Court's credibility assessment. (Dkt. No. 52 at 4). The Government explains that although Barnes was released after he was arrested and never brought to court, this scenario does not preclude his prosecution. Moreover, Barnes "could well have entertained the idea that if he was to be charged, evidence suppressed in [Wesselhoft's] case would likewise be suppressed in his, or that if evidence was suppressed, the Government will likely not pursue his prosecution," which would show "a likelihood of bias." *Id.* The Government also points out that whether or not Barnes was motivated by bias was not an essential consideration in the Court's credibility analysis. The Court agrees.

Key to the Court's credibility assessment was that the agents' testimony was "consistent and believable," that "none of the agents attempted to avoid any questions or tailor their responses to hide the kind of improper actions that Barnes attributed to them," and that it simply "strain[ed] credulity" to believe Barnes' account. (Dkt. No. 40 at 12). The reference to Barnes' personal bias

was an additional ground on which the Court declined to credit Barnes' testimony. Therefore, the fact that Barnes was not charged does not alter the Court's credibility determination and does not provide a basis to grant his Motion to Reconsider.

### III.   CONCLUSION

For the reasons set forth above, the Court finds that Defendant Dwayne Wesselhoft's Motion to Reconsider has no merit. Accordingly, the Court will deny the Motion. (Dkt. No. 49).

An appropriate Order accompanies this Memorandum Opinion.

Date: June 9, 2016                                         _____/s/_____
                                                           RAYMOND L. FINCH
                                                           Senior District Judge